## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALTINA POUNCIL, Administrator of the
ESTATE OF WILLIE SUE CLAY,

                 Plaintiff,                 CIVIL ACTION

                                        Case No. 10-1314-JTM-DJW

v.

BRANCH LAW FIRM,
et al.,

                 Defendants.

### MEMORANDUM AND ORDER

      Before the Court is Plaintiff's Motion to Compel Defendants to Fully Comply with Second Set of Interrogatories and Second Requests for Production (ECF No. 74). Plaintiff requests an order under Fed. R. Civ. P. 37(a) compelling Defendants to provide full and complete responses to her Second Set of Interrogatory Nos. 26-32 and Second Request for Production Nos. 2-4 and 7. The motion is granted.

### I.     Background Facts

      Plaintiff Altina Pouncil, Administrator of the Estate of Willie Sue Clay ("Estate"), filed suit against Defendants Turner Branch and the Branch Law Firm, asserting claims for legal malpractice, negligence, and breach of fiduciary duty. After Willie Sue Clay died while taking the pharmaceutical drug Vioxx, Plaintiff retained Defendants to represent the Estate in its claim against the drug manufacturer, Merck & Co., Inc. The Estate's claim against Merck ended when the Estate was barred from recovery under the Vioxx settlement agreement because the claim failed to meet the eligibility requirements. Plaintiff's claims against Defendants arise from the events surrounding the Estate's failed claim against Merck.

Plaintiff filed this action on September 15, 2010.  She served her First Set of Interrogatories on Defendants, consisting of interrogatories numbered Nos. 1 through 25, and First Requests for Production on December 22, 2010.  Defendants served their responses and objections to Plaintiff's First Set of Interrogatories and First Requests for Production on March 23, 2011.

On May 12, 2011, Plaintiff supplemented her discovery requests and served her Second Set of Interrogatories (Nos. 26 through 32) and Second Requests for Production (Nos. 1 through 7) on Defendants.  Defendants served their discovery responses on June 27, 2011, after Plaintiff granted Defendants a two-week extension of time to serve their responses.  Defendants objected to the Second Set of Interrogatories and Second Requests for Production.  After attempting to confer to resolve the discovery disputes as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, Plaintiff filed the instant motion to compel.

## II.    Objection that Interrogatories Exceed Numerical Limit

Defendants argue that they should not be compelled to respond to Plaintiff's Second Set of Interrogatories at all because Plaintiff, in her First Set of Interrogatories, has served more than the 40 interrogatories allowed by the Scheduling Order (ECF No. 12).   Specifically, Defendants contend that Plaintiff's First Interrogatory Nos. 6, 16, 18, and 20 should each be counted as multiple interrogatories.

Federal Rule of Civil Procedure 33(a)(1) imposes a limit on the number of allowable interrogatories.  Under this rule, a party may serve a maximum of 25 written interrogatories upon any other party, including all discrete subparts, unless the parties otherwise stipulate or the Court allows more.  The advisory committee notes to the 1993 amendments note that parties should not evade this presumptive limit through using question subparts to seek information about discrete

2

separate subjects.[1]  This Court has noted the difficulty in identifying discrete subparts in *Williams v. Board of County Commissioners of the Unified Government of Wyandotte County and Kansas City, Kansas*:

> Interrogatories often contain subparts.  Some are explicit and separately numbered or lettered, while others are implicit and not separately numbered or lettered. Extensive use of subparts, whether explicit or implicit, could defeat the purposes of the numerical limit contained in Rule 33(a), or in a scheduling order, by rendering it meaningless unless each subpart counts as a separate interrogatory.  On the other hand, if all subparts count as separate interrogatories, the use of interrogatories might be unduly restricted or requests for increases in the numerical limit might become automatic.[2]

As this Court has noted in numerous decisions since *Williams*,[3] the advisory committee provided the following guidance for when subparts should count as separate interrogatories:

> Each party is allowed to serve 25 interrogatories upon any other party, but must secure leave of the court (or stipulation from the opposing party) to serve a larger number.  Parties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects.  However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.[4]

*Federal Practice and Procedure* commentators Wright, Miller and Marcus have construed the

---

[1]Fed. R. Civ. P. 33(a) advisory committee's note (1993 Am.)

[2]*Williams v. Bd. of Cnty. Comm'rs of the Unified Gov't of Wyandotte Cnty. & Kan. City, Kan.*, 192 F.R.D. 698, 701 (D. Kan. 2000).

[3]*See, e.g., High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 4036424, at *3 (D. Kan. Sept. 12, 2011); *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2008 WL 1924945, at *2 (D. Kan. Apr. 28, 2008); *Johnson v. Kraft Foods N. Am., Inc.*, No. 05-2093-JWL-DJW, 2006 WL 3143930, at *1 (D. Kan. Oct. 31, 2006); *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 664 (D. Kan. 2004); *Williams*, 192 F.R.D. at 701.

[4]Fed. R. Civ. P. 33(a) advisory committee's note (1993 Am.).  *See also* Advisory Committee Note, 146 F.R.D. 401, 675-76 (Fed. 1993).

advisory committee's guidance to mean that "an interrogatory containing subparts directed at eliciting details concerning a common theme should be considered a single question," while an interrogatory with "subparts inquiring into discrete areas is likely to be counted as more than one for purposes of the limitation."[5]  The Court has previously applied these "common theme" standards in determining whether interrogatories exceed the numerical limit.[6]  With this common theme standard and its previous applications in mind, this Court makes the following specific findings with regard to the disputed interrogatories:

A.     **First Interrogatory No. 6**

Defendants assert that Interrogatory No. 6 of Plaintiff's First Set of Interrogatories should be counted as seven interrogatories because it asks for facts supporting seven allegations in the complaint.  Interrogatory No. 6 requests that Defendants "[i]dentify each fact which you claim supports your denial of the allegation contained in paragraph 32 of the Complaint and identify all documents relied on to support such denial. Please provide a response for each subsection of paragraph 32 of the Complaint."  Paragraph 32 of the Complaint alleges the following:

> 32.     Defendants breached the duty to exercise ordinary care, skill, and knowledge of a reasonably competent attorney in one or more of the following respects:

> a.     Defendants failed to properly prepare Claims Forms including, but not limited to, providing erroneous information.

> b.     Defendants failed to make timely and adequate submissions of documentation to the Vioxx Settlement Agreement Claims Administrator.

---

[5]8B Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2168.1 (3d ed. 2010) at 39-40.

[6]*See High Point SARL*, 2011 WL 4036424, at *4-9 (applying common theme test to disputed interrogatories).

4

c.      Defendants failed to determine the reasons for, or take reasonable actions to respond to, the Notices of Ineligibility issued by the Vioxx Settlement Agreement Claims Administrator and Gate Committee.

d.      Defendants failed to provide adequate or timely counsel to [Plaintiff] regarding the Estate's claims and decision making throughout the Vioxx Settlement Agreement process.

e.      Defendants failed to properly consult with and advise [Plaintiff] before making the decision to appeal the Gate Committee's Notice of Ineligibility to the Special Master.

f.      Defendants failed to properly supervise non-attorney employees of [Branch Law Firm] and allowed such non-attorney employees to exercise an improper amount of autonomy and responsibility over aspects of administration of the Estate's Vioxx Settlement Agreement claim.

g.      Defendants, through their conduct, failed to exercise the ordinary care, skill, and knowledge of a reasonably competent attorney in representing and advising the Estate.

The Court agrees with Defendants and finds that Interrogatory No. 6 should be counted as seven separate interrogatories.  Although the information sought may arguably relate to the common theme of Defendants' alleged negligence in the administration and prosecution of the Estate's Vioxx claim, the Court finds the allegations are sufficiently different and require Defendants to identify a different set of facts. They should therefore be counted as separate interrogatories.  Interrogatory No. 6 will be counted as seven interrogatories for purposes of the interrogatory limit.

### B.    First Interrogatory No. 16

Defendants assert that Plaintiff's First Interrogatory No. 16 should be counted as four interrogatories.  It requests that Defendants "[i]dentify each fact which you claim supports your affirmative defense contained in paragraph J of the Affirmative Defenses section of the Answer and identify all documents relied on to support such affirmative defense." Paragraph J of Defendants' Answer states that Plaintiff's claims are barred by the doctrines of unclean hands, laches, estoppel,

5

and/or waiver.

The Court concludes that Interrogatory No. 16 should not be counted as four separate interrogatories. The four affirmative defenses asserted by Defendants are closely related equitable doctrines that pertain to alleged actions taken by Plaintiff that would relieve Defendants of liability on her claim.  The closely related nature of these equitable defenses satisfies the common theme analysis because their success depends upon on certain alleged conduct of Plaintiff with respect to asserting her claim.   Moreover, these defenses appear to be boilerplate defenses that are commonly asserted together in an answer.  It is therefore appropriate for Plaintiff to inquire as to the facts supporting them in one interrogatory.  Interrogatory No. 16 should therefore be counted as only one interrogatory.

### C.      First Interrogatory No. 18

Defendants assert that Interrogatory No. 18 should be counted as three interrogatories.  It asks Plaintiff the following:

> At the time Ms. Pouncil entered the Estate of Willie Sue Clay's Vioxx Claim into the Vioxx Settlement Agreement please state whether you advised Ms. Pouncil to enter the Estate of Willie Sue Clay's Vioxx Claim into the Vioxx Settlement Agreement and whether you believed the Clay Claim was eligible for recovery under the Vioxx Settlement Agreement. If you believe the Clay Claim was eligible for recovery under the Vioxx Settlement Agreement, why do you believe the Clay Claim was denied? If you do not believe the Clay Claim was eligible for recovery under the Vioxx Settlement Agreement, why was the Clay Claim appealed to the Vioxx Settlement Agreement Special Master?

The Court concludes that Interrogatory No. 18 does not contain three discrete subparts that should be treated as separate interrogatories. All of the information sought in this interrogatory pertains to the common theme of the Clay Claim being entered into the Vioxx Settlement Agreement.  Requesting specific information about Defendants' beliefs regarding the claim and its

entry into the Vioxx Settlement Agreement does not enlarge the interrogatory beyond the bounds of its common theme.  Accordingly, Interrogatory No. 18 will be counted as one interrogatory.

> **D.**      **First Interrogatory No. 20**

Defendants assert that Interrogatory No. 20 should be counted as three interrogatories. Interrogatory No. 20 asks Plaintiff to identify:

> [A]ny and all persons who worked on, assisted with, or participated in any aspect of the representation of the Clay Claim and for such individuals please identify (1) whether such person is employed by [Branch Law Firm] or another entity, (2) what role such person played in the representation of the Clay Claim including, without limitation, such persons duties and responsibilities, (3) whether such person has medical education or training, and (4) what role, if any, such person played in determining the injury indicated on the Claims Form.

The Court concludes that Interrogatory No. 20 does not contain discrete subparts that should be treated as separate interrogatories. This interrogatory is limited to the common theme of who worked on the Clay Claim during Defendants' representation of Plaintiff.  Each asserted discrete subpart requests pertinent, specific information related to those persons, and it does not exceed the common theme. Again, there is no indication that this interrogatory is abusive or meant to skirt the interrogatory limit.  Instead, it  merely asks for enumerated details regarding persons who worked on the Estate's Vioxx claim.   Accordingly, Interrogatory No. 20 will be counted as one interrogatory.

In summary, the Court counts Plaintiff's First Interrogatory No. 6 as seven interrogatories and counts Nos. 16, 18 and 20 each as a single interrogatory.  Even with Interrogatory No. 6 constituting seven interrogatories, Plaintiff's Second Set of Interrogatories (Nos. 26 through 32) does not exceed the 40-interrogatory limit imposed by the Scheduling Order.  Accordingly, Defendants are not relieved of their obligation to respond to Plaintiff's Second Set of Interrogatories

based upon the Second Set exceeding the interrogatory limit.

## III.   Specific Objections to Plaintiff's Second Set of Interrogatories and Requests for Production

### A.   Second Interrogatory Nos. 26-28

Interrogatory Nos. 26 through 28 ask Defendants for the following information:

> Please indicate whether or not you contend Willie Sue Clay suffered a myocardial infarction prior to beginning her use of Vioxx pursuant to the provisions of Exhibit 3.2.1 of the Vioxx Settlement Agreement.  If so, please identify each fact which you claim supports this contention and identify all documents you believe support your contention. (Interrogatory No. 26)

> Please indicate whether or not you contend Willie Sue Clay's family history is ambiguous or unambiguous pursuant to the provisions of Exhibit 3.2.1 of the Vioxx Settlement Agreement.  If so, please identify each fact which you claim supports this contention and identify all documents you believe support this contention. (Interrogatory No. 27)

> Please indicate whether or not you contend Willie Sue Clay's injury is less than "Level 1-Death" pursuant to the provisions of Exhibit 3.2.1 of the Vioxx Settlement Agreement.  If so, identify each fact which you claim supports this contention and identify all documents you believe support this contention. (Interrogatory No. 28)

Defendants object to these interrogatories as seeking the mental impressions, conclusions, opinions, and legal theories of their counsel, which are protected from discovery as attorney opinion work product.  They also object that these interrogatories are premature contention interrogatories and they should not be compelled to respond until discovery is complete and the experts have been deposed.

### 1.   Work Product Objection

The work product doctrine, first recognized by the Supreme Court in *Hickman v. Taylor*,[7] is governed by the uniform federal standard set forth in Fed. R. Civ. P. 26(b)(3).  Under Rule

---

[7]329 U.S. 495, 510-11 (1947).

26(b)(3)(A), the work product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Subsection (B) further provides that the court "must protect against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Thus, although Rule 26(b)(3)(A) is confined to the discovery of "documents and tangible things," the doctrine has been expanded to reach information sought through interrogatories when the interrogatory seeks the mental impressions or legal conclusions of an attorney.[8] A party claiming work product protection has the burden of establishing that the material sought to be protected as work product comes within the doctrine.[9] "A mere allegation that the work product doctrine applies is insufficient."[10]

In the context of an objection to an interrogatory, this Court has held that unless the interrogatory (1) specifically inquires into an attorney's mental impressions, conclusions, or legal theories, or (2) asks for the content of a document protectable as work product, it is inappropriate to raise a work product objection.[11] The work product doctrine also does not provide any protection for "facts concerning the creation of work product or facts contained within work product."[12] In a similar vein, it has held that the work product doctrine does not prevent a party from propounding

---

[8]*Gipson v. Sw. Bell Tel. Co.*, No. 08-2017-EFM-DJW, 2009 WL 790203, at *15 (D. Kan. Mar. 24, 2009), *overruled in part by* 2009 WL 4157948 (D. Kan. Nov. 23, 2009).

[9]*Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

[10]*Id.*

[11]*Gipson*, 2009 WL 790203, at *15. *See also Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 645 (D. Kan. 1999) (sanctioning defense counsel for improperly asserting attorney-client and work product objections to deposition questions).

[12]*Resolution Trust Corp.*, 73 F.3d at 266.

9

an interrogatory asking about "the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery."[13]

The Court finds that Interrogatory Nos. 26-28 do not specifically request or inquire into the mental impressions, conclusions, or legal theories of defense counsel.  Nor do they ask for the content of any documents or materials that Defendants have shown to be protected work product.  The interrogatories ask for Defendants' contentions with respect to the factual issues of whether Willie Sue Clay suffered a myocardial infarction prior to beginning her use of Vioxx, whether her family history is ambiguous, and whether her injury is less than "Level 1-Death."   The interrogatories also request that Defendants identify the facts and documents supporting their contentions.  Defendants, who have the burden of supporting their work product objection, have not shown that answering these interrogatories would reveal the mental impressions, conclusions, opinions, or legal theories of their counsel.  Accordingly, Defendants' work product objection to Interrogatory Nos. 26-28 is overruled.

### 2.   Objection as Premature Contention Interrogatories

Defendants also object to the interrogatories as premature contention interrogatories.  Fed. R. Civ. P. 33(a)(2) allows certain contention interrogatories. It provides that an interrogatory "may relate to any matter that may be inquired into under Rule 26(b).   An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, . . . ."[14]   Interrogatory Nos. 26-28 appear to be asking for Defendants'

---

[13]*Hoffman v. United Telecomms., Inc.,* 117 F.R.D. 436, 439 (D. Kan. 1987) (citing *Casson Constr. Co. v. Armco Steel Corp.*, 91 F.R.D. 376, 385 (D. Kan. 1980) (quoting 8 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2023 (1970 & Supp. 1978)).

[14]Fed. R. Civ. P. 33(a)(2).

contentions that relate to certain facts. Those facts include whether Willie Sue Clay suffered a myocardial infarction prior to beginning her use of Vioxx, whether her family history is ambiguous, and whether her injury is less than "Level 1-Death." These contention interrogatories provide Plaintiff with the opportunity to determine what proof is necessary to effectively refute Defendants' position on these issues. Plaintiff is permitted to serve contention interrogatories.

In addition to their other objections, Defendants ask, at a minimum, that the Court permit them to delay answering Interrogatory Nos. 26-28 until the completion of discovery. It is within the court's discretion to "order that the interrogatory need not be answered until designated discovery is complete."[15] Here, the Court finds no persuasive reason for Defendants to defer their answers to Interrogatory Nos. 26-28. Defendants should answer these interrogatories as fully as they can, keeping in mind their continuing obligation to supplement their discovery responses as additional or different information becomes available. Although Defendants have not yet deposed Plaintiff's expert witness, Plaintiff has already provided Defendants with her expert's report. Accordingly, the Court denies Defendants' request to defer compelling responses to Interrogatory Nos. 26-28 as premature contention interrogatories. Plaintiff's motion to compel Defendants to answer Second Interrogatory Nos. 26-28 is granted.

### B.    Second Interrogatory Nos. 29-32

Plaintiff's Second Interrogatory No. 29 asks for the number of Vioxx claimants Defendants represented at the end of each month during the period of February 2008 to July 2009. Interrogatory No. 30 seeks the number of Vioxx claimants in which a certain employee worked on, assisted with, or participated in any aspect of the representation as of the end of each month. Interrogatory No.

---

[15]Fed. R. Civ. P. 33(a)(2).

31 requests the number of people employed by Defendants at the end of each month for the period

February 2008 to July 2009.   Interrogatory No. 32 asks Defendants to "indicate how many of

Defendants' employees, exclusively or for a majority of their time (more than half of their working

time), worked on, assisted with, or participated in any aspect of the representation of Vioxx

claimants as of the end of each month. Of those employees, please indicate how many were

attorneys, how many were paralegals, and how many were employees other than attorneys or

paralegals."

### 1.   Relevance Objection

Defendants object to Interrogatories Nos. 29-32 as not reasonably calculated to lead to the

discovery of admissible evidence.   It argues that the information requested in the interrogatories

bears no relationship to the claims and defenses in this case.

Federal Rule of Civil Procedure 26(b)(1) sets the scope of discovery.   It provides that

"[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

claim or defense."[16]   The court construes relevance broadly at the discovery stage of litigation, and

a "request for discovery should be considered relevant if there is 'any possibility' that the

information sought may be relevant to the claim or defense of any party."[17]

The Court finds that these interrogatories request relevant information.   The interrogatories

request information regarding the number of clients Defendants represented during the time in

question, Defendants' case management procedures, and details regarding how Defendants oversaw

employees who worked on Vioxx claims.   All of this information is relevant to and probative of

---

[16]Fed. R. Civ. P. 26(b)(1).

[17]*In re Bank of Am. Wage & Hour Emp't Practices Litig.,* 275 F.R.D. 534, 538 (D. Kan. 2011) (internal quotations omitted).

Plaintiff's claim that Defendants breached a professional duty of care and were negligent in handling the Estate's Vioxx claim.  Defendants' relevance objection to Interrogatory Nos. 29-32 is overruled.

### 2.    Mootness

Defendants also argue that Plaintiff's motion to compel information responsive to Interrogatory Nos. 29-32 is moot because Plaintiff was able to elicit the information sought during depositions of Defendant Branch and several employees of the law firm.  The Court has reviewed the deposition transcripts submitted and concludes that Interrogatory Nos. 29-32 are not moot as argued by Defendants. Although the depositions briefly addressed the general themes of the disputed interrogatories, they are insufficient as a substitute for answering the specific interrogatories at issue here.  The Court finds that the deposition testimony does not sufficiently answer the interrogatories and therefore does not render Plaintiff's motion to compel moot.  Accordingly, Defendants shall provide responsive answers to these interrogatories.  Plaintiff's motion to compel Defendants to answer Second Interrogatory Nos. 29-32 is granted.

### C.    Second Request for Production Nos. 2 and 3

Request No. 2 asks for "[a]ll documents relating to any form of advertising which were used or publicized in the State of Kansas at any time by Defendants soliciting the representation of persons injured as a result of using Vioxx including, but not limited to, television, radio, and print." Request No. 3 similarly requests information "relating to any form of advertising used by third-parties at any time who were retained by Defendants or who referred clients or potential clients to Defendants."  These Requests thus seek television, radio and print advertising—whether directly by Defendants or through third parties—in the state of Kansas that solicited the representation of persons injured as a result of using Vioxx.

13

Defendants argue that these Requests are not properly oriented in time or tailored to the issues in this matter because they are not limited to a time frame in which Plaintiff or other heirs of the Estate would have allegedly seen advertisements before retaining Defendants. Defendants cite no authority to support this objection, although it is apparently akin to arguing the disputed Requests are overly broad and unduly burdensome. The Court has reviewed Request Nos. 2 and 3 and concludes that they are narrowly tailored to a reasonable time frame. Consequently, the Court denies Defendants' objections regarding the alleged failure to properly orient or tailor the requests to the issues in this matter.

Although the requests ask for "all documents related to any form of advertising" and contain no explicit time limitation, they are not overly broad in terms of time. They are limited to advertising to potential clients regarding injuries sustained as a result of using Vioxx; this is a sufficient limitation in terms of both time and substance. Defendants assert that they only advertised regarding Vioxx injuries in the state of Kansas during a limited period of time. Due to the explicit limitation to Vioxx-related advertising, Request Nos. 2 and 3 are necessarily limited to this time frame. Because this period would not extend for an overly burdensome period of time or cover an overly burdensome amount of material, Defendants' objection to the requests for failure to tailor or orient in time is without merit.

Despite their objections, Defendants state that they have already produced the only documents responsive to these Requests. In her reply, Plaintiff disputes that the newsletters produced by Defendants are responsive to the Requests. She claims that Defendants have not produced any documents related to advertising from other law firms with whom Defendants had agreements with to conduct advertising and refer clients. To the extent that Defendants have in their

14

possession, custody or control any documents related to advertising for Vioxx-related-injuries from other law firms with whom they had agreements, Defendants shall produce these documents within 30 days of the date of this Memorandum and Order.  Plaintiff's motion to compel Defendants to produce documents responsive to Second Request Nos. 2 and 3 is granted.

### D.      Second Request for Production No. 4

Request No. 4 seeks "[a]ll documents relating to agreements of any kind, which Defendants had with other law firms or attorneys regarding fee sharing arrangements related to the representation of the Estate of Willie Sue Clay."  Defendants object to the Request as not reasonably calculated to lead to the discovery of admissible evidence.  They argue that fee arrangements between Defendants and other firms or attorneys bear no relation to the claims and defenses in this matter, and they should not be compelled to produce any such documents.  They also assert that the motion to compel is moot with regard to Request No. 4 as they have produced responsive documents and Plaintiff's counsel has already questioned Defendant Branch regarding the fee arrangements at his deposition.

### 1.      Relevance Objection

The Court finds that the documents sought by Request No. 4. are directly relevant to Plaintiff's claims.  Request for Production No. 4 seeks information regarding Defendants' fee arrangements with other law firms that could bear directly on the representations allegedly made to potential clients, including the Estate.  Defendants' fee sharing agreements with other law firms relating the representation of the Estate's Vioxx claim are relevant to Plaintiff's malpractice, negligence, and breach of fiduciary duty claims.  More specifically, the information is relevant to whether the fee arrangements provided a financial incentive for Defendants to accept more Vioxx

15

clients than they could competently handle.  Defendants' relevancy objection to Request No. 4 is overruled.

### 2.  Mootness

Defendants also assert that Plaintiff's motion to compel is moot because they have produced documents responsive to the Request and Plaintiff's counsel has already deposed Defendant Branch regarding the fee arrangements.  In her reply, Plaintiff argues that the motion to compel on this Request is not moot.  She argues that Defendants cannot avoid their obligation to produce documents responsive to a request for production by lodging baseless objections and then claiming they are moot because Plaintiff later had the opportunity to question a witness in a deposition about a related topic.  Plaintiff maintains that she is entitled to receive all documents that are responsive to this request.

The Court has reviewed the excerpted portions of Defendant Branch's deposition transcript and concludes that the motion to compel as to Request No. 4 is not moot. Although Defendant Branch was questioned about the fee arrangement with the Estate, he did not testify regarding any fee sharing arrangements that Defendants had with other law firms or attorneys.  Moreover, this testimony is not the same as actually producing the agreements and other responsive documents. Defendant Branch's deposition testimony does not render Plaintiff's motion to compel on Request No. 4 moot.  Plaintiff's motion to compel Defendants to produce documents responsive to Second Request No. 4 is granted.

### E.  Second Request for Production No. 7

Request for Production No. 7 asks Defendants to produce "[a]ll calendars, appointment books, or other logs of dates and/or events that Defendant Turner Branch maintained at any time for

16

the period from February 14, 2008, to July 20, 2009."  Defendants object to the request on the grounds the information is protected by the attorney-client privilege and the work product doctrine, and is not relevant.  They further point out that Plaintiff's counsel had an opportunity to question Defendant Branch during his deposition and that it would be redundant to require production of documents responsive to Request No. 7.

### 1.    Attorney-Client Privilege Objection

The standards for evaluating the attorney-client privilege are well-established.  "In federal court, the determination of what is privileged depends upon the dictates of Rule 501 of the Federal Rules of Evidence."[18]  Subject-matter jurisdiction in this case is based on diversity; therefore, "state law supplies the rule of decision."[19]

Under Kansas law, the essential elements of the attorney-client privilege are:

(1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless privilege is waived.[20]

The existence of the privilege is determined on a case-by-case basis.[21]  The party seeking to assert the attorney-client privilege as a bar to discovery has the burden of establishing that it applies.[22]

---

[18]*ERA Franchise Sys., Inc. v. N. Ins. Co. of New York*, 183 F.R.D. 276, 278 (D. Kan. 1998) (quoting *Fisher v. City of Cincinnati*, 753 F. Supp. 692, 694 (S.D. Ohio 1990)).

[19]Fed. R. Evid. 501.

[20]*ERA Franchise,* 183 F.R.D. at 278 (citations omitted); *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 418, 997 P.2d 681, 689 (Kan. 2000) (citations omitted).

[21]*Upjohn Co. v. United States*, 449 U.S. 383, 396–97 (1981).

[22]*Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984).

Moreover, a party must make a "clear showing" that the privilege applies.[23]

With these rules in mind, the Court finds that Defendants have failed to make a clear showing that the requested documents are protected by the attorney-client privilege. Defendants' lone, unsupported statement that producing responsive documents will likely require disclosure of Defendant Branch's confidential communications with other clients is not sufficient to meet their burden. Defendants' objection that Request No. 7 calls for the production of documents or information protected by the attorney-client privilege is overruled.

### 2.    Work Product Objection

Defendants also argue that the calendars and appointment books sought are protected from disclosure as work product because they would disclose Defendant Branch's mental impressions regarding matters in which he represents other clients. Like their attorney-client privilege objection above, the Court finds that Defendants have not met their burden of establishing that Defendant Branch's calendars, appointment books, or other logs of dates and events contain information that would constitute the protected mental impressions of Defendant Branch relating to other clients. Defendants, as the party with the burden of supporting their work product objection, have not shown that the documents requested contain information that would reveal the mental impressions, conclusions, opinions, or legal theories of Defendant Branch. Accordingly, Defendants' work product objection to Request No. 7 is overruled.

### 3.    Relevance Objection

Defendants also object to Request No. 7 as not reasonably calculated to lead to the discovery of admissible evidence. They argue that because the relevancy of the Request is not apparent on its

---

[23]*Id.*

18

face, Plaintiff must establish the relevancy of the documents sought.  The Court agrees that Plaintiff has the burden to show the relevancy of Defendant Branch's calendars, appointment books, or other logs of dates and events.

Plaintiff argues that the information regarding Defendants' schedule during the requested time period is relevant because Defendants assert that Turner Branch made the final decision on all aspects of Plaintiff's claim.   Plaintiff points out that Defendants, in their Supplemental Response to Interrogatory Nos. 19 and 20, state that Defendant Branch "oversaw all individuals working on the claim; all individuals were under his control and no dispositive steps were taken on the claim without Mr. Branch's knowledge and input." According to Plaintiff, this response demonstrates that Defendants are claiming that Defendant Branch had an extensive and intimate involvement with the representation of Plaintiff in relation to her Vioxx claim and that no major decision was made on the claim without Mr. Branch's direct involvement.  Based on this alleged extensive involvement, Defendant Branch's schedule during the relevant time period of Defendants' representation of the Estate is relevant as to whether Mr. Branch was, in fact, present and available during such time period to provide the type of involvement that Mr. Branch claims that he provided in Plaintiff's representation.

Plaintiff has convinced the Court that Request No. 7 for Defendant Branch's calendars, appointment books, or other logs of dates and events seeks information relevant to the issue of whether Defendant Branch was present and available during the relevant time period he claims that he was involved in the Estate's Vioxx claim.  Accordingly, Defendants' objection based on the relevancy of the discovery request is denied.

19

### 4.      Objection That Information Sought is Redundant

Defendants' final argument is that it would be redundant to require them to produce documents responsive to Request No. 7 because Plaintiff's counsel had the opportunity to question Defendant Branch during his deposition about his schedule during the Vioxx litigation.  They assert that Defendant Branch testified that his time between November 2007 and 2009 was primarily spent on Vioxx matters, including frequent travel to New Jersey, Houston, and New Orleans.

The Court does not find Request No. 7 to be unreasonably duplicative or cumulative of Defendant Branch's deposition testimony.  The documents requested could contradict or support his deposition testimony.  Plaintiff's motion to compel Defendants to produce documents responsive to Second Request No. 7 is granted.

## IV.     EXPENSES

### A.      Expenses Related to this Motion

Under Fed. R. Civ. P. 37(a)(5)(A), if a motion to compel is granted, the court "must, after providing an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  The court must not order payment, however, if the opposing party's response or objection was substantially justified or other circumstances make an award of expenses unjust.[24]  In this case, Plaintiff requests that the Court to assess her costs and fees related to the motion   against Defendants.  Upon a review of the briefing, the Court concludes that the parties should bear their own fees and expenses.  Although the Court is granting Plaintiff's motion to compel, Defendants

---

[24]Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).

were substantially justified in lodging their supernumerary objections to the second set of interrogatories.   Plaintiff's request for expenses related to this motion is denied.

### B.       Expenses Related to Future Discovery and Depositions

Plaintiff additionally requests that the Court require Defendants to pay for any costs incurred in deposing Defendants for a second time.   Because Plaintiff did not have all of the relevant information when she first deposed Defendants, the theory proceeds, it might be necessary to take a second deposition after Defendants comply with this Order.   Prospectively assessing these costs, however, is not necessary.   If Plaintiff determines the information disclosed by Defendants pursuant to this Order requires additional depositions to be taken, then she will be free to move the Court for leave to depose Defendants and with any associated expenses at that time.   For the time being, Plaintiff's request for prospective costs related to secondary depositions is accordingly denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Defendants to Fully Comply with Second Set of Interrogatories and Second Requests for Production (ECF No. 74) is granted.   **Within thirty (30) days of this Memorandum and Order**, Defendants shall serve, without objection, their answers to Plaintiff's Second Set of Interrogatories Nos. 26-32 and produce documents responsive to Plaintiff's Second Request for Production Nos. 2-4, and 7.

**IT IS FURTHER ORDERED THAT** each party shall bear its own fees and expenses related to this motion.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 13th day of December 2011.


                                        s/ David J. Waxse
                                        David J. Waxse
                                        U.S. Magistrate Judge

21