**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ALTINA POUNCIL, Administrator of the
ESTATE OF WILLIE SUE CLAY,

        Plaintiff,                       CIVIL ACTION

                                                  Case No. 10-1314-JTM-DJW

v.

BRANCH LAW FIRM,
et al.,

        Defendants.

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiff's Motion to Compel Defendants to Fully Comply with Certain Interrogatories and Requests for Production (ECF No. 84). Plaintiff requests an order under Fed. R. Civ. P. 37(a) compelling Defendants to fully respond to her First Interrogatory Nos. 19 and 20, and to pay for a third-party forensic examination of their computer systems in order to identify and produce all documents responsive to Plaintiff's First Request Nos. 6-7, 31 and Second Request Nos. 5-6. Plaintiff also requests that Defendants be ordered to institute a litigation hold, pay her expenses related to this motion, and be sanctioned for failing to comply with their discovery obligations. As explained below, the motion is granted in part and denied in part.

**I.    Background Facts**

Plaintiff Altina Pouncil, Administrator of the Estate of Willie Sue Clay ("Estate"), filed suit against Defendants Turner Branch and the Branch Law Firm, asserting claims for legal malpractice, negligence, and breach of fiduciary duty. After Willie Sue Clay died while taking the pharmaceutical drug Vioxx, Plaintiff retained Defendants to represent the Estate in its claim against the drug manufacturer, Merck & Co., Inc. The Estate's claim against Merck ended when the Estate was

barred from recovery under the Vioxx settlement agreement because the claim failed to meet the eligibility requirements. Plaintiff's claims against Defendants arise from the events surrounding the Estate's failed claim against Merck.

Plaintiff filed this action on September 15, 2010. She served her First Set of Interrogatories and First Requests for Production to Defendants Branch Law Firm and Turner Branch on December 22, 2010.[1] The Scheduling Conference was held on February 4, 2011. Defendants served their responses and objections to Plaintiff's First Set of Interrogatories and First Requests for Production on March 23, 2011.[2] On April 4, 2011, Plaintiff served a golden rule letter upon Defendants that addressed the known deficiencies in Defendants' responses to Interrogatories No. 19 and 20. On May 3, 2011, Defendants served Supplemental Responses to Plaintiff's First Set of Interrogatories.[3] On June 27, 2011, Defendants serve their responses to Plaintiff's Second Requests for Production.[4] Plaintiff deposed several of Defendants' employees in July 2011. During those depositions, Plaintiff claims that she discovered additional information which led her to believe that Defendants' discovery responses were incomplete. As a result of this, Plaintiff served another golden rule letter on Defendants on August 2, 2011, setting forth her position that Defendants failed to produce numerous documents which are responsive to her requests for production. After attempting to confer to resolve the discovery disputes as required by Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2, Plaintiff filed the instant motion to compel.

---

[1]*See* Pl.'s Notice of Service of Disc. (ECF No. 8).

[2]*See* Defs.' Certificate of Service (ECF No. 16)

[3]*See* Defs.' Certificate of Service (ECF No. 21).

[4]*See* Defs.' Certificate of Service (ECF No. 64).

## II.   Requested Relief

### A.   Order Compelling Additional Information Responsive to Interrogatory Nos. 19 and 20

Interrogatory No. 19 requests that Defendants identify "any and all persons who played any role in the preparation and submittal of the Claims Form to the Claims Administrator."[5] It further requests that Defendants identify "the person's role including, without limitation, the tasks and duties performed by such person, and instruction, if any, provided to the person."[6]

Interrogatory No. 20 requests that Defendants:

> Identify any and all persons who worked on, assisted with, or participated in any aspect of the representation of the Clay Claim and for such individuals please identify (1) whether such person is employed by BLF or another entity, (2) what role such person played in the representation of the Clay Claim including, without limitation, such persons duties and responsibilities, (3) whether such person has medical training, and (4) what role, if any, such person played in determining the injury indicated on the Claims Form.[7]

In their responses to both Interrogatory Nos. 19 and 20, Defendants identify three individuals – 2 paralegals and a legal assistant – in addition to Defendant Branch who worked on the claim. For Interrogatory No. 20, Defendants also identified an attorney who worked with Plaintiff on the personal representation issue. In their supplemental responses to Interrogatory Nos. 19 and 20, Defendants identified two more legal assistants and a description of their duties.

Plaintiff contends that Defendants' responses to these two interrogatories are incomplete because they fail to provide information on all current and former employees who assisted or participated in the representation of Plaintiff's Vioxx claim. Plaintiff points out that Defendants

---

[5] Ex. C to Pl.'s Mem. in Supp. of Mot. to Compel (ECF No. 85-1) at 38.

[6] Id.

[7] Id. at 38-39.

3

initially failed to include the names of two former employees who worked on Plaintiff's claim. It was only after Plaintiff reviewed documents produced by Defendants and discovered the names of two former employees who worked on the claim that Defendants supplemented their interrogatory responses with the names of these two former employees.

Plaintiff next argues that the depositions of Defendants' employees and Defendants' own internal database suggest that Defendants have not identified all the current and former employees who likely worked on Plaintiff's claim. The depositions of Defendants' employees revealed names of other employees who reviewed claims packages, and Plaintiff argues that those employees have not been identified in Defendants' responses. Additionally, Defendants' database contains a log of activities completed by different employees and shows employee initials next to different activities. Plaintiff argues that some of these initials in Defendants' own database activity log represent individuals who have not been identified by Defendants and who likely worked on Plaintiff's claim. In light of the fact that the identity of these individuals remains unknown and that Defendants have failed to identify other individuals whose identities were revealed during depositions, Plaintiff asserts that Defendants' responses to Interrogatories Nos. 19 and 20 remain deficient.

Defendants argue that the scope of Interrogatories Nos. 19 and 20 does not include those employees who "may have" or "were likely to have" participated in the representation of Plaintiff's claim. Defendants contend that the names of persons uncovered through depositions or the initials of persons found in the database reflect individuals who fall into those two categories of persons who "may have" or "were likely to have" participated in the representation of Plaintiff's claim. Defendants assert that the motion should be denied because Plaintiff is requesting information

beyond the scope of the interrogatories. Defendants also assert that providing only those names of employees who actually worked on the claim, as opposed to providing Plaintiff with a list of all persons who "may have" worked on the claim, is to Plaintiff's benefit because it saves needless and costly depositions.

Defendants' argument that the initials from the database activity log and the other individuals named in the course of the depositions were individuals who "may have" worked on Plaintiff's claim, as opposed to individuals who actually worked on the claim, is not persuasive. In the absence of any explanation to the contrary, Plaintiff's inference that employee initials next to entries in the database activity log reflect individuals who did in fact assist or participate in Plaintiff's claim is reasonable.

The Court will therefore order Defendants to serve supplemental responses to Plaintiff's Interrogatory Nos. 19 and 20 that identify the names of any persons, not previously identified, whose initials appear in Defendants' database activity log for Plaintiff's Vioxx claim, as well as any person who worked on, assisted with, or participated in any aspect of Defendants' representation of the Clay claim. In addition to the names of these individuals, Defendants will provide Plaintiff with any other information pertaining to these individuals that is requested in Interrogatory Nos. 19 and 20.

### B. Order Compelling Defendants to Bear Cost of Forensic Examination of Their Computer Systems

First Request for Production No. 6 seeks production of all correspondence between Branch Law Firm and Plaintiff or any other representative of the Estate. Request No. 7 seeks all correspondence between Branch Law Firm and the Claims Administrator. Request No. 31 seeks all documents relating to Defendants' representation of the Clay Claim. In her Second Request No. 5, Plaintiff requests all correspondence between Turner Branch and other employees relating to the

5

representation of Willie Sue Clay. Second Request No. 6 asks for all correspondence between employees relating to the representation of Willie Sue Clay.

Plaintiff alleges that Defendants failed to produce all documents responsive to her requests for production. First, Plaintiff points to correspondence from Defendants in her possession that was never produced by Defendants in response to Second Request No. 5. Plaintiff next contends that the depositions of Defendants' employees in July 2011 revealed information that suggests that Defendants' responses to the requests for production are incomplete. Defendants' current and former employees testified in their depositions that they regularly communicated with each other by email in the course of their representation of Vioxx clients. Plaintiff asserts that Defendants have produced only one email between their employees related to their representation of Plaintiff, and that email was one that Plaintiff obtained by subpoenaing the Vioxx claims administrator. According to Plaintiff, the deposition testimony further revealed that other documents, such as spreadsheets, relating to Plaintiff's representation were created. Plaintiff claims that Defendants have never produced any such documents.

In their response brief, Defendants admit that certain correspondence responsive to Plaintiff's discovery requests may not have been produced. Defendants claim that when it became apparent during the employee depositions that some correspondence responsive to the requests for production may not have been produced, counsel for Defendants worked diligently with Plaintiff's counsel to create a protocol under which Defendants' computer systems would be searched. At Plaintiff's insistence, Defendants have agreed to the retention of an information technology firm to perform a forensic search of Defendants' computer systems consistent with the search protocol outlined in the August 24, 2011 email between counsel. Defendants argue that if Plaintiff insists on the third-

6

party forensic search of Defendants' computer system, Plaintiff should bear the cost of such a search.

In light of the deposition testimony of Defendants' employees and Defendants' own admission that some correspondence may not have been produced, the Court finds that Defendants have failed to produce all documents responsive to Plaintiff's First Request Nos. 6-7, 31, and Second Request Nos. 5-6. To remedy this, the parties have agreed to retain a third party to perform a forensic examination of Defendants' computer systems to locate responsive documents. The parties, however, disagree on who should bear the costs of this forensic examination. The parties do not indicate in the briefing how much the forensic examination will cost. The Court will therefore defer any determination of who should bear the costs – or any apportionment of the costs – until after the examination is completed and the final costs known. The Court therefore orders Defendants to proceed with the forensic search of their computer systems using protocols agreed upon by the parties in order to identify all documents responsive to Plaintiff's Requests for Production. The Court also orders Defendants to produce all documents responsive to Plaintiff's First Request Nos. 6-7, 31, and Second Request Nos. 5-6 that are uncovered as a result of this forensic examination. After the forensic examination has been completed and the final costs known, the parties should confer to see if they can agree on who should bear the costs. If they are unable to reach an agreement on costs, Defendants may then file another motion for a determination of who should bear the costs of the forensic examination.

### C. Order Compelling Litigation Hold

Plaintiff also requests an order compelling Defendants to immediately issue a litigation hold for all documents pertaining to this claim. She claims that Defendant Branch admitted in his

deposition that he failed to place a litigation hold on all documents relating to Defendants' representation of Plaintiff. Defendants have thus failed to properly ensure the retention, protection, and production of responsive documents.

Defendants contend that they took appropriate steps to preserve documents and information potentially responsive to Plaintiff's requests for production. They argue that Plaintiff's assertion that Defendants did not issue a litigation hold or otherwise take appropriate steps to preserve discoverable documents is "misplaced." During his deposition, Defendant Branch testified that although the law firm did not have a formal document retention policy, he did inform employees to make any information available and to produce all the records they had. Mr. Branch also testified that as a matter of course, the Branch Law Firm does not destroy records and that if he had learned of the potential destruction of records, he would have instructed employees not to destroy the records.

"Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."[8] This duty to preserve evidence extends to evidence that the party knew or should have known was "relevant to imminent or ongoing litigation."[9] The duty to preserve means action must be taken to preserve evidence, meaning that it is not lost, destroyed, inadvertently or negligently overwritten, or intentionally wiped out, and that it is available to be produced to the

---

[8] *School-Link Techs., Inc. v. Applied Res., Inc.*, No. 05-2088-JWL, 2007 WL 677647, at *3 (D. Kan. Feb. 28, 2007) (quoting *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y. 2003)).

[9] *Id.*

other side.[10]

In this case, Plaintiff's counsel deposed Defendant Branch about whether he issued a litigation hold relating to the Clay Vioxx claim:

> Q. Did - - did you have a - - did your - did you issue a litigation hold on any e-mails or correspondence relating to the Willie Clay claim after receiving knowledge of a potential claim on this claim?
>
> A. Yes. We asked any of the --any of that information that we had to make it available, yes, if that's what you mean by "litigation hold."
>
> Q. I just mean instructing anybody not to destroy any -
>
> A. We wouldn't destroy anything.
>
> Q. Okay. And so anything --anything you --any e-mails that you had related to the Clay claim would still be present somewhere in your --in your computer system.
>
> A. No.
>
> Q. Okay.
>
> A. It wouldn't. We don't have a computer system. We just recently developed a program with Needles, where we - - I guess you could say now have a system. Before, others had their - - kept their own hard drives and their own laptops. And I didn't control that, their laptops or their hard drives, no.
>
> Q. Okay. But you did instruct everyone to - - whoever has any correspondence regarding the Willie Clay claim or - - to produce that so they could be produced in this case.
>
> A. Not everyone, because I don't - - I don't see everyone that is here now. I didn't - - I didn't call former employees and tell them. But anyone that's here, I said, "Produce all of the records we have," yes.
>
> Q. Okay.

---

[10]*Philips Elecs. N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1195 (D. Utah 2011 (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004); *The Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456 (S.D.N.Y. 2010)).

> A. And we don't destroy records.
>
> Q. I understand that. I didn't say you did, and I wasn't alleging that. I just didn't know if your instruction to provide documents also included instruction that, "Hey. anything related to this," if it's going to be - - some people have a document retention policy where documents are routinely deleted after a certain amount of time period. And I didn't know if you indicated, "Hey, if anything is going to be destroyed under any kind of retention policy, don't do that." So - - and make sure that that's retained relating to the Willie Clay claim.
>
> A. I don't think we had a need for that. If I thought that was going to - - somebody was going to be deleting or destroying potential evidence, I would have done that. That's not the case. I think now, since this claim, we have enacted - - has nothing to do with this claim.  But we have a system called Needles, which is a uniform system for everyone to be on, so to speak, on the same page on their e-mails. Before, we did not have Needles, and we did not have a program. Period. But I would never tell anybody to destroy evidence.
>
> Q. Yeah. I didn't - - I wasn't making that assumption. I was asking, again, about some firms have policies on how long documents are retained, and sometimes things get inadvertently destroyed from the standpoint of because they weren't aware that there was a claim pending. And so that's why those types of memos are issued, to avoid that happening.
>
> A. We're kind of new to the e-mail world. But we do have a policy on storage of old documents. We try to keep them five years before they're destroyed in storage.  But we don't have an e-mail policy. And we do now with Needles. But Needles is new in the last year.[11]

From this testimony, the Court concludes that Defendants did not issue a litigation hold or take affirmative steps to ensure that all key employees preserved relevant evidence, including electronically-stored information, as to the Clay claim.  The Court will therefore order Defendants to immediately issue a litigation hold to preserve evidence relevant to this litigation.  If the forensic examination of Defendants' computer systems reveals that relevant evidence was not preserved,

---

[11]Turner Dep. 281:2-284:9 (ECF No. 85-3).

Plaintiff can seek sanctions for spoliation against Defendants at that time.[12]

## III.   Expenses and Sanctions

Plaintiff requests that the Court order Defendants to pay the expenses, including attorney's fees, she incurred in the preparation of this motion and impose sanctions upon Defendants pursuant to Fed. P. Civ. P. 37(c)(1)(C) and (b)(2). She also requests that if additional depositions of current or former employees are necessary, then Defendants should be ordered to bear the costs and expenses associated with taking these additional depositions.

Defendants urge the Court to deny Plaintiff's request for her attorney's fees in filing this motion or sanctions under Rule 37(c)(1)(C) or (b)(2). They assert that they have provided appropriate responses to Interrogatory Nos. 19 and 20, and therefore no sanction is justified. With regard to their responses to Plaintiff's requests for production, Defendants argue that Rule 37(c)(1)(C) or (b)(2) sanctions are only appropriate if they fail to amend or supplement a prior response under Rule 26(e). Defendants state that they have not intentionally withheld documents or failed to timely supplement their responses. During the depositions of their employees they learned that their document production may be incomplete. They then timely conferred with Plaintiff to establish a protocol for supplementing their document production. According to Defendants, Plaintiff is not entitled to the imposition of sanctions simply because the parties were unable to reach consensus on the manner in which the supplementation should occur.

### A.   Expenses Related to this Motion

Under Fed. R. Civ. P. 37(a)(5)(C), if a motion to compel is granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the

---

[12]*See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009).

motion." In this case, the Court finds that the majority of Defendants' arguments in opposition to Plaintiff's motion to compel were not substantially justified. Defendants make the meritless argument that they did not identify all persons sought by Interrogatory No. 19 (which asks for "all persons who played any role in the preparation and submittal of the Claims Form") and No. 20 (which asks for "all persons who worked on, assisted with, or participated in any aspect of the representation of the Clay Claim") because the interrogatories do not ask for persons who "may have" or "were likely to have" assisted in the representation of Plaintiff. Even after the depositions of Defendants' employees revealed the names of other former employees who worked on the Clay Claim, Defendants only supplemented with the two names brought to their attention even when Plaintiff repeatedly requested identification of initials appearing in the database activity log. Nor was Defendants opposition to the motion regarding who bears the costs of the forensic examination of their computer systems substantially justified, especially as the need for the third-party forensic examination of their computer systems was based on their own failure to adequately search its computer systems for responsive documents. The Court finds that Defendants should be required to pay the expenses that Plaintiff incurred in filing the motion to compel. Plaintiff's request for attorney's fees and expenses under Rule 37(a)(5)(c) is therefore granted.

To aid the Court in determining the proper amount of attorney's fees and expenses to be paid by Defendants, Plaintiff's counsel shall file, on or before **March 16, 2012**, an affidavit itemizing the reasonable expenses, including attorney's fees, that Plaintiff incurred in bringing this Motion to Compel. Defendants shall have until **March 30, 2012** to file any response to the affidavit. The Court will thereafter issue a second order determining Plaintiff's reasonable expenses, and specifying the amount and time of payment.

### B.     Sanctions

Plaintiff also asks for sanctions to be imposed upon Defendants pursuant to Fed. P. Civ. P. 37(c)(1)(C) and (b)(2).  Under Fed. P. Civ. P. 37(c)(1)(C), a court may impose appropriate sanctions on a party who fails to provide information or identify witnesses as required by Rule 26(a) or (e). Rule 37(b)(2) allows the court to impose sanctions on a party who fails to obey a discovery order.

The Court finds that sanctions are not appropriate under either Rule 37(c)(1)(C) or 37(b)(2). Defendants' failure to fully answer Interrogatory Nos. 19 and 20, as well as their failures to produce all documents responsive to Plaintiff's requests for production, do not warrant sanctions under either of these Rules.  Plaintiff's request for sanctions under Rule 37(c)(1)(C) or (b)(2) is therefore denied.

### C.     Expenses Related to Additional Depositions

Plaintiff also requests that the Court require Defendants to pay for any prospective costs incurred in deposing additional employees of Defendants.  Because Plaintiff did not have all of the relevant information when she first deposed Defendants' employees, she claims that she might need to take additional depositions after Defendants comply with this Order.  Prospectively assessing these costs, however, is not necessary.  If Plaintiff determines the information disclosed by Defendants pursuant to this Order requires additional depositions to be taken, she will be free at that time to move the Court for leave to depose Defendants' employees and for an order compelling Defendants to pay the expenses associated with the additional depositions.  For the time being, Plaintiff's request for prospective costs related to secondary depositions is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Defendants to Fully Comply with Certain Interrogatories and Requests for Production (ECF No. 84) is granted in part and denied in part. **Within thirty (30) days of this Memorandum and Order**, Defendants shall

serve supplemental responses to Plaintiff's Interrogatory Nos. 19 and 20 that identify the name of any persons, not previously identified, whose initials appear in Defendants' database activity log for Plaintiff's Vioxx claim, as well as any person who worked on, assisted with, or participated in any aspect of Defendants' representation of the Clay claim. In addition to the names of these individuals, Defendants will provide Plaintiff with any other information pertaining to these individuals that is requested in Interrogatory Nos. 19 and 20. Defendants are further ordered to proceed with the third-party forensic search of their computer systems using protocols agreed upon by both parties for the purpose of identifying all documents responsive to Plaintiff's First Request Nos. 6-7, 31 and Second Request Nos. 5-6. **Within thirty (30) days of the forensic examination**, Defendants shall produce all documents responsive to these Requests for Production that are uncovered as a result of this forensic examination.

**IT IS FURTHER ORDERED** that after the third-party completes its forensic examination of Defendants' computer systems and the final costs are known, the parties should confer to see if they can agree on who should bear the costs. If they are unable to reach an agreement on costs, then Defendants may file another motion for a determination regarding who should bear the costs of the forensic examination.

**IT IS FURTHER ORDERED** that Plaintiff's request for an order compelling Defendants to immediately institute a litigation hold for all evidence pertaining to this litigation is granted. Defendants shall immediately issue a litigation hold to preserve evidence relevant to this litigation. If the forensic examination of Defendants' computer systems reveals that relevant evidence was not preserved, Plaintiff can seek sanctions for spoliation against Defendants at that time.

**IT IS FURTHER ORDERED** that Plaintiff's request for attorney's fees and expenses under

Fed. R. Civ. P. 37(a)(5)(C) is granted. By **March 16, 2012**, Plaintiff's counsel shall file an affidavit itemizing the reasonable expenses, including attorney's fees, that Plaintiff incurred in bringing this Motion to Compel. Defendants shall have until **March 30, 2012** to file any response to the affidavit.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 7th day of March 2012.

s/ David J. Waxse
David J. Waxse
U.S. Magistrate Judge
